IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Benjamin Hendricks,                    :

                Plaintiff,             :   Case No.  2:11-cv-399

    v.                                 :   JUDGE MICHAEL H. WATSON
                                           Magistrate Judge Kemp
Ms. Wessell, et al.,                   :

                Defendants.            :


                    REPORT AND RECOMMENDATION

    Plaintiff, Benjamin Hendricks, an inmate currently housed at
the Frazier Health Center, has brought this action against
several state employees in their individual capacities pursuant
to 42 U.S.C. §1983 and state law.  Defendants have filed a motion
to dismiss, which has been fully briefed.  For the following
reasons, it is recommended that the Court grant in part and deny
in part the motion to dismiss as described below.

                    I.   The Complaint

    The following facts are all taken from Mr. Hendricks's
complaint.  Because Mr. Hendricks is without counsel, his
complaint must be liberally construed.  See Haines v. Kerner, 404
U.S. 519 (1972).

    On or around January 15, 2010, Mr. Hendricks was being
transported from the infirmary (apparently of the Pickaway
Correctional Institution) to a different part of the prison,
namely the segregation area.  The medical staff and Mr. Hendricks
informed the corrections officer who transported him that he had
a prosthetic implant in his left shoulder and needed to be
handcuffed in front, and the corrections officer complied.

    When Mr. Hendricks arrived at the part of the prison where
he would be housed, Defendant Hazzard demanded an explanation for

why Mr. Hendricks was handcuffed in front. The transporting
corrections officer explained that Mr. Hendricks had a prosthetic
implant in his left shoulder requiring front handcuffing. When
Defendant Hazzard prepared to uncuff Mr. Hendricks, Mr. Hendricks
asked Defendant Hazzard to remove the latex gloves he was wearing
because Mr. Hendricks had a latex allergy. At that point
Defendant Hazzard became "verbally abusive and extremely hostile
for no apparent reason." Then, without justification, Defendant
Hazzard "grabbed plaintiff by the left arm and jerked on it . . .
and threw the plaintiff in a holding cell causing extreme pain
and a 'popping' sound to issue from his left shoulder." Mr.
Hendricks informed Defendant Hazzard that he was having a medical
emergency and asked for a nurse. Defendant Hazzard initially
refused and then ultimately called a nurse.

As a result of Defendant Hazzard's actions, Mr. Hendricks
was taken to a medical center by ambulance and x-rayed. While
the results of the initial x-ray were inconclusive, on February
15, 2010, approximately a month later, Mr. Hendricks's shoulder
pain became so bad that he was sent back to the medical center
for more testing. At that time, the doctors determined that the
implant had become loose and required surgery. When he was seen
in March, 2010 for the surgery clinic, he was informed that his
shoulder needed to be fused together, creating a permanent
disability.

Mr. Hendricks filed several grievances to complain about
Defendant Hazzard's conduct in injuring his shoulder. He first
filed an Informal Complaint Resolution, which was forwarded to
the Acting Inspector of Institutional Services, but he received
no answer. Around March 19, 2010, Mr. Hendricks filed another
grievance regarding the same incident, this time directed to
Defendant Wessell. Mr. Hendricks received no answer to this
grievance either. Sometime around the end of May 2010, Mr.

Hendricks had a conversation with the case manager at the health center regarding the incident with Defendant Hazzard, and the case manager informed him that he had spoken with Defendant Lawrence, who was supposed to speak with Defendant Hazzard about the incident.

A few weeks later, around June 18, 2010, Defendant Hazzard destroyed Mr. Hendricks's legal materials that related to a separate action, along with information related to that action.

Mr. Hendricks then filed several grievances relating to Defendant Hazzard's conduct in destroying the legal materials. First, he filed a complaint on June 19, 2010 to Defendant Harris about the incident. Next, he filed a complaint on June 22, 2010 to Defendant Lawrence about the same incident. Mr. Hendricks received no direct answer to those complaints. However, sometime after the incident, Defendant Lt. John Doe came to investigate the incident and saw Mr. Hendricks's property "all over the place" and "refused to address the incident or review the cameras stating he 'had seen worse.'"

In addition to destroying Mr. Hendricks's legal materials, Defendant Hazzard also harassed Mr. Hendricks by, among other actions, threatening to harm him physically if he pursued legal action against Defendant Hazzard.

On December 1, 2010, Mr. Hendricks complained about the problems with Defendant Hazzard by writing a letter that was ultimately forwarded to Defendant Harris. Around January 13, 2011, Defendant Harris confronted Mr. Hendricks "in a very hostile manner" and "refused to address/entertain an 'incident with an officer' which was the reason for the letter." On or around the same day, January 13, 2011, Mr. Hendricks filed a complaint to the warden and he received an "unsatisfactory" answer. Mr. Hendricks then sent a request to Defendant Lawrence for a Notification of Grievance, and Defendant Lawrence refused

to issue either a Notification of Grievance or a Disposition of Grievance.  Rather, Defendant Lawrence informed Mr. Hendricks that he needed to file an appeal to the Chief Inspector.  Mr. Hendricks did so, and on or around March 8, 2011, he received notice that the Chief Inspector would not address the issue unless a Notification of Grievance and Disposition of Grievance were provided.

## II.  Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts.  Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Wright & Miller, Federal Practice and Procedure §1356 (1990).  The moving party is

entitled to relief only when the complaint fails to meet this
liberal standard.  <u>Id</u>.

On the other hand, more than bare assertions of legal
conclusions is required to satisfy the notice pleading standard.
<u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th
Cir. 1988).  "In practice, a complaint must contain either direct
or inferential allegations respecting all the material elements
to sustain a recovery under <u>some</u> viable legal theory."  <u>Id</u>.
(emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high
> standard; we recognize the policies behind rule 8 and
> the concept of notice pleading.  A plaintiff will not
> be thrown out of court for failing to plead facts in
> support of every arcane element of his claim.  But when
> a complaint omits facts that, if they existed, would
> clearly dominate the case, it seems fair to assume that
> those facts do not exist."

<u>Id</u>. It is with these standards in mind that the motion to dismiss
will be decided.

### III.  <u>Discussion</u>

A.  <u>Exhaustion of Remedies</u>

Defendants first seek dismissal on the grounds that Mr.
Hendricks did not exhaust his administrative remedies as to his
deliberate indifference or retaliation claims.  One section of
the Prison Litigation Reform Act (PLRA) provides that "[n]o
action shall be brought with respect to prison conditions under
[42 U.S.C. §1983] or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility
until such administrative remedies as are available are
exhausted."  42 U.S.C. §1997e(a).  However, the Supreme Court
held "that failure to exhaust is an affirmative defense under the
PLRA, and that inmates are not required to specially plead or
demonstrate exhaustion in their complaints."  <u>Jones v. Bock</u>, 549
U.S. 199, 216 (2007).  Accordingly, a plaintiff's complaint is
only subject to dismissal for failure to exhaust if the

allegations of the complaint demonstrate a failure to exhaust that would bar the requested relief. Id. at 215.

Here, Defendants argue that Mr. Hendricks did not comply with Ohio's grievance requirements as to his deliberate indifference or retaliation claims. In support, they cite to the paragraphs of Mr. Hendricks's complaint that allege certain actions he took to seek redress for his alleged injuries. In particular, they state that Mr. Hendricks did not file a formal grievance. However, in support of that statement, they merely cite an absence of allegations of any formal grievance.

Because failure to exhaust is an affirmative defense, Mr. Hendricks was not required to plead the steps he took to exhaust his administrative remedies. Neither can a failure to exhaust be inferred based on the fact that Mr. Hendricks did allege that he took some steps to seek administrative remedies. Defendants, in essence, seek to have the Court apply one of the principles of contract interpretation, which states that the express mention of one thing excludes all others, to interpret the complaint. However, doing so would penalize Mr. Hendricks for omitting elements of an affirmative defense that he had no duty to plead. Defendants have cited to no allegation that affirmatively alleges that Mr. Hendricks failed to take the steps necessary to exhaust his administrative remedies. Therefore, failure to exhaust is not a proper basis for dismissing his complaint.

B.   Retaliation Claim

Next, Defendants seek dismissal of the complaint for failure to state a retaliation claim. In particular, Defendants assert that Mr. Hendricks failed to allege that the adverse action taken against him was motivated at least in part by protected conduct engaged in by Mr. Hendricks. In order to state a claim for retaliation, a plaintiff must establish that adverse action was motivated at least in part by the plaintiff's protected conduct.

<u>Hill v. Lappin</u>, 630 F.3d 468, 475 (6th Cir. 2010).  At the
summary judgment stage, circumstantial evidence, such as
"disparate treatment of similarly situated individuals" or "the
temporal proximity between the prisoner's protected conduct and
the official's adverse action," can suffice to establish
retaliatory motive.  <u>Id</u>. at 475-76 (citations omitted).  While
the Court of Appeals has expressed its reluctance to find that
temporal proximity alone establishes retaliatory motive, <u>id</u>. at
476, at the motion to dismiss stage, "temporal proximity between
the protected conduct and the adverse action by the state actor
'alone may be significant enough to constitute indirect evidence
. . . to create an inference of retaliatory motive.'" <u>Paige v.
Coyner</u>, 614 F.3d 273, 283 (6th Cir. 2010) (citation and internal
quotation omitted).  In addition, alleged statements can
constitute direct evidence of retaliatory motive.  <u>Hill</u>, 630 F.3d
at 476.  Ultimately the question is whether the complaint alleges
facts that, if taken as true, could establish that the defendant
was acting with a retaliatory motive.  <u>Paige</u>, 614 F.3d at 283.

     The protected conduct at issue here is Mr. Hendricks's First
Amendment right to file non-frivolous grievances in response to
mistreatment by Defendant Hazzard.  <u>See Herron v. Harrison</u>, 203
F.3d 410, 415 (6th Cir. 2000).  The adverse action which Mr.
Hendricks has alleged is that Defendant Hazzard destroyed his
legal material that was part of another case.  In support of his
claim that this was retaliatory, Mr. Hendricks has alleged a
close temporal proximity between the time when the case manager
informed him that someone would be speaking with Defendant
Hazzard about the incident and the time when Defendant Hazzard
destroyed his legal material.  In addition, Mr. Hendricks has
alleged that Defendant Hazzard threatened to harm him physically
if he pursued legal action against Defendant Hazzard.  While this
is not direct evidence of Defendant Hazzard's motivation for

destroying Mr. Hendricks's legal materials, it plausibly demonstrates Defendant Hazzard's desire to deter Mr. Hendricks from pursuing complaints against Defendant Hazzard. Accordingly, Mr. Hendricks has alleged facts sufficient to plead the elements of his retaliation claim.

C.   Tacit Authorization Claims

Third, Defendants argue that Mr. Hendricks fails to state a claim for tacit authorization of actions violating his rights under the Eighth and First Amendments. "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted). Where individual defendants are alleged to be liable based on the acts of others who they supervise, there must be a "direct causal link between the acts of individual [employees] and the supervisory defendants." Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982); see also Doe ex rel. Doe v. City of Roseville, 296 F.3d 431, 440-41 (6th Cir. 2002) (dismissing claims against individual defendants where there was no causal connection between the action or inaction of the individual defendant and the deprivation of a Constitutional right).

In light of this requirement of causation, a mere failure to respond to a grievance does not state a claim under §1983 where that non-response did not cause or contribute to the constitutional violation. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (citations omitted) (also noting that "an expectation of receiving process is not,

8

without more, a liberty interest protected by the Due Process Clause."); see also Argue v. Hofmeyer, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to an effective prison grievance procedure"). An official's failure to act may rise to the level of a constitutional violation where that failure is an abandonment of "the specific duties of his position . . . in the face of actual knowledge of a breakdown in the proper workings of the department," that "result[s] directly in a violation of the plaintiff's" Constitutional rights. Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (involving an official who repeatedly failed to review and respond to the medical needs of the prison population). However, there is no liability where officials knew of alleged violations against the plaintiff "but failed to act when the situation was in their control." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that allegations that the defendants had denied the plaintiff's administrative grievances and failed to remedy the alleged retaliatory behavior did not rise to the level of a constitutional violation).

Mr. Hendricks has asserted tacit authorization claims against Defendants Wessell, Doe, Harris, and Lawrence. These claims are based on these individuals' responses or failures to respond to complaints about either the alleged conduct of Defendant Hazzard on January 15, 2010 or his alleged retaliatory conduct which occurred on June 18, 2010. The allegations against the individual defendants will be considered in turn.

Mr. Hendricks's only claim against Defendant Wessell is that around March 19, 2010, Mr. Hendricks filed a grievance against Defendant Hazzard with Defendant Wessell but she failed to respond to it. That grievance addressed only the January 15,

2010 incident.  There are no allegations that at the time Mr.
Hendricks complained to Defendant Wessell, he was concerned about
any continuing conduct or that his medical needs were not being
cared for adequately.  Unlike the defendants in <u>Hicks v. Frey</u>,
who had daily communications about the ongoing medical needs of
the plaintiff that were not being adequately addressed and who
knew that the conditions of his confinement were inadequate, <u>see</u>
992 F.2d 1450, 1457 (6th Cir. 1993), Defendant Wessell received a
single complaint about an isolated incident that had already
occurred.  Mr. Hendricks does not allege that her failure to
respond to this grievance caused some future constitutional
violation.  Rather, this appears to be a straightforward "denial
of administrative grievances" or "failure to act" that does not
state a claim for liability under §1983.  <u>Grinter</u>, 532 F.3d at
576.  Accordingly, the claim against Defendant Wessell should be
dismissed.

　　　Mr. Hendricks alleges that, following the June 18, 2010
incident where Defendant Hazzard allegedly destroyed Mr.
Hendricks's legal materials, Defendant Lt. John Doe came to
investigate that incident.  Mr. Hendricks alleges that Defendant
Doe "saw the plaintiff's property all over the place and refused
to address the incident or review the cameras stating he 'had
seen worse.'" The complaint does not contain allegations
sufficient to demonstrate that Defendant Doe's conduct was
motivated by Mr. Hendricks's protected conduct, so there is no
claim that Defendant Doe's actions or inactions themselves
constituted retaliation.  <u>See Thaddeus-X v. Blatter</u>, 175 F.3d
378, 394-95 (6th Cir. 1999) (setting forth the elements of a
retaliation claim: (1) plaintiff engaged in protected conduct;
(2) an adverse action was taken against him that would deter a
person of ordinary firmness from continuing to engage in that
conduct; and (3) the adverse action was motivated at least in

part by the protected conduct).  Neither is there any allegation
that Defendant Doe's investigation caused Defendant Hazzard to
destroy Mr. Hendricks's legal materials.  Indeed, that was the
very conduct that Defendant Doe was investigating.  There are no
allegations that Defendant Doe was personally involved in any
allegedly unconstitutional action.  Once again, this appears to
be a straightforward "denial of administrative grievances" or
"failure to act" that does not state a claim for liability under
§1983.  <u>Grinter</u>, 532 F.3d at 576.  Accordingly, the claim against
Defendant Lt. John Doe should be dismissed.

Mr. Hendricks alleges two instances of action or inaction by
Defendant Harris, both of which relate to her response or lack of
response to Mr. Hendricks's complaints about Defendant Hazzard's
alleged retaliatory actions.  First, Mr. Hendricks alleges that
he filed a complaint to Defendant Harris on June 19, 2010, the
day after Defendant Hazzard supposedly destroyed Mr. Hendricks's
legal materials.  Mr. Hendricks alleges that Defendant Harris did
not respond to that grievance.  Second, Mr. Hendricks alleges
that he wrote a letter about other "incidents of harassment from
Defendant Hazzard ranging from a middle finger to physical
threats if legal action against him is pursued" as well as other
problems, and that the letter was forwarded to Defendant Harris.
He then alleges that on January 13, 2011, Defendant Harris
"confronted the plaintiff in a very hostile manner," and "refused
to address/entertain an 'incident with an officer' which was the
reason for the letter . . . ."  All of these allegations also
involve "denial[s] of administrative grievances" or "failure[s]
to act" that do not state a claim for liability under §1983.
<u>Grinter</u>, 532 F.3d at 576.  Accordingly, the claim against
Defendant Harris should be dismissed.

Finally, Mr. Hendricks alleges various instances where
Defendant Lawrence either failed to respond to his grievances or

responded inadequately. The allegations are very similar in substance to the ones discussed above. For example, Mr. Hendricks filed an "Informal Complaint Resolution" relating to the January 15, 2010 incident which was sent to the Acting Inspector of Institutional Services but went unanswered. Although Defendant Lawrence is the Inspector (rather than the Acting Inspector) of Institutional Services, this allegation could be directed toward his failure to respond to that grievance. However, as discussed above, such an allegation, without more, does not state a claim for liability under §1983. Mr. Hendricks also alleges that at the end of May 2010, he had a conversation with the case manager at the health center about the incident with Defendant Hazzard and the case manager "informed plaintiff that he had spoke with defendant Lawrence who was suppose [sic] to speak with defendant Hazzard." This allegation, while relevant to Mr. Hendricks's retaliation claim against Defendant Hazzard, does not allege any misconduct by Defendant Lawrence.

Next, Mr. Hendricks alleges that Defendant Hazzard destroyed his legal materials shortly after that conversation, that Mr. Hendricks filed a grievance to Defendant Lawrence about that misconduct, and that he again received no answer. This allegation is substantively identical to the first allegation against Defendant Harris. Once again, this failure to respond to a grievance does not rise to the level of a constitutional violation. Lastly, Mr. Hendricks alleges that he sent a request to Defendant Lawrence for a Notification of Grievance and that she responded that he needed to file an Appeal to the Chief Inspector. However, the Chief Inspector informed Mr. Hendricks that the issue would not be addressed unless Mr. Hendricks submitted a Notification of Grievance and Disposition of Grievance. This seems to be a claim that Defendant Lawrence

wrongfully denied him a Notification of Grievance necessary to pursue his appeal and to seek further relief through the prison grievance process.

Again, non of these additional incidents state a constitutional claim. They also fail to state a claim of a violation of the right to access the courts because Mr. Hendricks has not alleged frustration of a particular legal claim. <u>See</u> <u>Barnett v. Luttrell</u>, 414 Fed. Appx. 784, 787 (6th Cir. 2011) (holding that allegations that a defendant did not properly deal with the plaintiff's grievances and falsified various information in relation to the grievances failed to state a claim because to state a violation of a prisoner's First Amendment right to access the courts "a prisoner must allege that a prison official's conduct caused him an actual injury, such as frustration of a particular legal claim.") (citation omitted). There are no allegations that transform this alleged misconduct into a constitutional violation. Accordingly, the claim against Defendant Lawrence should be dismissed.

D.  <u>State Law Claims</u>

Defendants seek dismissal of Mr. Hendricks's state law claims of assault and battery, menacing, harassment, and slander against Defendant Hazzard. Under O.R.C. §9.86 no such claims may be maintained against state officials unless and until it has been determined that those officials acted manifestly outside the scope of their employment or acted with malicious purpose, in bad faith, or in a wanton and reckless manner. O.R.C. §9.86. That determination cannot be made by a federal court, but is reserved to the Ohio Court of Claims under O.R.C. §2743.02(F), which reads:

> A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or

employee's employment or official responsibilities, or
that the officer or employee acted with malicious
purpose, in bad faith, or in a wanton or reckless
manner shall first be filed against the state in the
court of claims, which has exclusive, original
jurisdiction to determine, initially, whether the
officer or employee is entitled to personal immunity
under section 9.86 of the Revised Code and whether the
courts of common pleas have jurisdiction over the civil
action. . . .

Accordingly, regarding claims arising under Ohio law such as the
ones made by Mr. Hendricks, "Ohio law requires that, as a
condition precedent to asserting a cause of action against a
state employee in his individual capacity, the Court of Claims
must first determine that the employee is not entitled to the
immunity provided for in Revised Code section 9.86." Haynes v.
Marshall, 887 F.2d 700, 705 (6th Cir. 1989); see also Nuovo v.
The Ohio State University, 726 F. Supp. 2d 829, 848 (S.D. Ohio
2010) (Frost, J.). Mr. Hendricks alleges that Defendant Hazzard
is a state employee and does not allege that the Ohio Court of
Claims has made a determination under §2743.02(F). Accordingly,
his state law claims should be dismissed without prejudice.

E.    Qualified Immunity

      Defendants also contend that they are protected by the
doctrine of qualified immunity. Public officials sued under 42
U.S.C. §1983 in their individual capacities may raise "qualified
immunity" as a defense to the suit. This doctrine "protects
government officials 'from liability for civil damages insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Conversely,
"[i]f the law was clearly established, the immunity defense
should fail, since a reasonably competent public official should
know the law governing his conduct." Harlow, 457 U.S. at 818-19.

The Court of Appeals applies "a two-prong test to qualified immunity claims, determining 'whether the facts that a plaintiff has ... shown make out a violation of a constitutional right,' and 'whether the right at issue was "clearly established" at the time of [the] defendant's alleged misconduct.'" Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011) (citing Pearson, 555 U.S. at 232 (2009) (additional citations omitted)). Courts may address these two prongs in the order that makes sense in light of the circumstances. Id.

"Preferably, the claimant will make factual allegations in his complaint which are sufficient to establish a violation of clearly established law before the qualified immunity issue arises." Noble v. Schmitt, 87 F.3d 157, 161 (6th Cir. 1996) (citation omitted). "If, however, the claimant has not done so, and the defendant then invokes qualified immunity, the court must allow the claimant the opportunity to present additional facts which 'show not only violations of constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" Id. (citations omitted). When the defense is raised by motion, "the district court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff." Dominique v. Telb, 831 F.2d 673 (6th Cir. 1987). The Court's decision on this issue should indicate the law as the Court perceives it and the basis for its conclusion that the constitutional rights at issue were clearly established.

In order for a constitutional right to be clearly established, it is necessary that a decision of the Supreme Court, the highest Court of the state where the case arose, or a

Court of Appeals announce the constitutional principle.  See
Robinson v. Bibb, 840 F.2d 349 (6th Cir. 1988).  While, a single,
idiosyncratic decision from a Court of Appeals from another
circuit is not sufficient to establish clearly a constitutional
right, a wide variety of sources can provide defendants with fair
warning even if they are not authoritative.  Barker v. Goodrich,
649 F.3d 428, 436 (6th Cir. 2011) (comparing Davis v. Holly, 835
F.2d 1175 (6th Cir. 1987) with Pearson, 555 U.S. at 244-45
(finding a doctrine clearly established based on precedent from
other circuits)).  The inquiry as to whether the right was
clearly established, "must be undertaken in light of the specific
context of the case, not as a broad general proposition."
Moldowan v. City of Warren, 578 F.3d 351, 375 (6th Cir. 2009).
But, "officials can still be on notice that their conduct
violates established law even in novel factual circumstances."
Hope v. Pelzer, 536 U.S. 730, 741 (2002).  "The relevant,
dispositive inquiry in determining whether a right is clearly
established is whether it would be clear to a reasonable officer
that his conduct was unlawful in the situation he confronted."
Moldowan, 578 F.3d at 375.  If so, qualified immunity is
unavailable.  See Dickerson v. McClellan, 101 F.3d 1151, 1157
(6th Cir. 1996).

     Here, the only claims that should survive the previous
challenges raised in Defendants' motion to dismiss are Mr.
Hendricks's §1983 claims against Defendant Hazzard for (1)
misusing force in disregard of Mr. Hendricks's known medical
issues in violation of the Eighth Amendment and (2) destroying
legal material in retaliation for Mr. Hendricks's exercise of his
First Amendment right to file non-frivolous grievances.  While
Defendants do not specifically discuss the Eighth Amendment claim
in the context of their qualified immunity argument, they argue
that Mr. Hendricks has not stated any constitutional claim as to

any Defendant.  Accordingly, Mr. Hendricks's Eighth Amendment
claim is discussed below.

"The Eighth Amendment prohibition on cruel and unusual
punishment protects prisoners from the 'unnecessary and wanton
infliction of pain.'" Barker, 649 F.3d at 434 (quoting Whitley v.
Albers, 475 U.S. 312, 319 (1986) (internal quotation marks
omitted)).  Mr. Hendricks has asserted that Defendant Hazzard
violated the Eighth Amendment by misusing force and disregarding
his known medical issues.  Regarding the alleged misuse of force,
whether a prison official's conduct violates the Eighth Amendment
depends on "whether force was applied in a good-faith effort to
maintain or restore discipline, or maliciously and sadistically
to cause harm." Barker, 649 F.3d at 434 (quoting Hudson v.
McMillian, 503 U.S. 1, 7 (1992) (internal quotations omitted)).
In addition, the conduct of prison officials violates the Eighth
Amendment when it exhibits "deliberate indifference . . . to a
prisoner's serious medical needs." Thompson v. County. of
Medina, 29 F.3d 238, 242 (6th Cir. 1994) (citing Estelle v.
Gamble, 429 U.S. 97, 104 (1976)).  A prison official is
deliberately indifferent "only if he knows that inmates face a
substantial risk of serious harm and disregards that risk by
failing to take reasonable measures to abate it." Hall v.
Warren, No. 09-2400, 2011 WL 4916703, *8 (6th Cir. Oct. 18, 2011)
(citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Taking the allegations in the complaint as true, Defendant
Hazzard knew that Mr. Hendricks had a prosthetic implant in his
left shoulder.  Nevertheless, he jerked on Mr. Hendricks's left
arm with such force that it loosened the implant and required
surgery that would create a permanent disability, as well as
inflicting severe pain.  According to the complaint, Defendant
Hazzard did so without any need to maintain or restore
discipline, but rather did so unnecessarily and apparently in

17

order to inflict pain. Such conduct, if it occurred, would violate the Eighth Amendment's prohibition on cruel and unusual punishment. See, e.g., Carlton v. Turner, No. 05-1009, 2006 WL 955886, *3 (6th Cir. April 12, 2006) (citations omitted).

Furthermore, Mr. Hendricks's right to be free from the unnecessary and wanton infliction of pain when he was handcuffed and not resisting was clearly established before 2010 when the conduct allegedly occurred. See, e.g., Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Supreme Court in Hudson explained the law as follows:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

Id. (considering conduct by prison guards punching and kicking the plaintiff while he was handcuffed and not resisting and holding that "the blows directed at [the plaintiff], which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes"). Accordingly, it would have been clear to a reasonable officer in Defendant Hazzard's circumstances that his conduct was unlawful in the situation he confronted.

The remaining claim at issue is Mr. Hendricks's claim that Defendant Hazzard destroyed his legal materials in retaliation for Mr. Hendricks's grievances about his mistreatment in violation of the First Amendment. In order to plead a retaliation claim under §1983, a plaintiff must allege that (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the

adverse action was motivated at least in part by the protected conduct.  See Thaddeus-X v. Blatter, 175 F.3d 378, 394-95 (6th Cir. 1999).  The protected conduct alleged here is Mr. Hendricks's First Amendment right to file non-frivolous grievances about mistreatment by Defendant Hazzard, and Mr. Hendricks alleges that Defendant Hazzard took adverse action against him by destroying his legal material in retaliation for exercising his First Amendment rights.

First, Mr. Hendricks alleged that he filed several complaints about Defendant Hazzard's conduct violating his Eighth Amendment rights.  This Circuit has held that "the filing of non-frivolous grievances is protected conduct under the First Amendment."  Scott v. Stone, 254 Fed. Appx. 469, 472 (6th Cir. 2007) (citing Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.")).  Taking Mr. Hendricks's allegations as true, these grievances were not frivolous and therefore, the filing of the grievances was protected conduct under the First Amendment.

Second, Mr. Hendricks alleged that in retaliation for those grievances, Defendant Hazzard destroyed Mr. Hendricks's legal materials and subsequently threatened to physically harm him.  The second element of a retaliation claim is satisfied if a plaintiff alleges an adverse action that "would deter a person of ordinary firmness from continuing to engage in [the protected] conduct."  Thaddeus-X, 175 F.3d at 394-95.  "[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law . . . .  Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."  Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002) (citation omitted).  In Bell, the

19

Court of Appeals held that confiscation of the plaintiffs' legal papers and medical diet snacks in retaliation for a lawsuit he filed was sufficient to meet his burden of demonstrating an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct. Id. at 605. The Court of Appeals further noted several cases from other circuits holding that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim. Id. at 604.

Finally, as discussed in more detail in section B above, Mr. Hendricks has alleged facts establishing that adverse action was motivated at least in part by the plaintiff's protected conduct. Hill v. Lappin, 630 F.3d 468, 475 (6th Cir. 2010).

As early as 1994, "[i]t [had been] well recognized that it is constitutionally impermissible to terminate even a unilateral expectation of a property interest in a manner which violates rights of expression protected by the First Amendment." Bell, 308 F.3d at 609 (citing Newsom v. Norris, 888 F.2d 371 (6th Cir. 1989) (holding that a failure to reappoint a prisoner to a position as inmate legal advisors was "impermissible, even where there was no cognizable expectation of continued service, if reappointment was denied because of the individual's exercise of First Amendment rights")). Thus, "a reasonable official would have been aware that, under the Gibbs and Newsom standard, conducting harassing cell searches and confiscating an inmate's legal papers and medical dietary supplements in retaliation for the inmate's exercise of his right of access to the courts would give rise to constitutional liability," because those actions were comparable in seriousness "to the warden's refusal to reappoint a prisoner as an inmate legal advisor that was at issue in Newsom, 888 F.2d 371." Bell, 308 F.3d at 612. Likewise, the destruction of legal materials here is comparable in seriousness

to the warden's refusal to reappoint a prisoner as an inmate legal advisor. Accordingly, Mr. Hendricks's right to be free from retaliation of the type alleged in the complaint was clearly established by 2010 when the initial retaliatory conduct was alleged to have taken place.

## IV. <u>Recommended Order</u>

It is therefore recommended that Defendants' Motion to Dismiss (#10) be granted in part and denied in part as follows. Defendants' Motion should be granted as to Defendant Wessell, Defendant Lt. Doe, Defendant Harris, and Defendant Lawrence. In addition, Defendants' Motion should be granted as to the state law claims against Defendant Hazzard, and those claims should be dismissed without prejudice. Defendants' Motion should be denied as to the remaining claims against Defendant Hazzard.

## V. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the

Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge