IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Benjamin Hendricks,               :

       Plaintiff,               :       Case No.  2:11-cv-399

  v.                              :       JUDGE MICHAEL H. WATSON
                                      Magistrate Judge Kemp
Ms. Wessell, et al.,              :

       Defendants.             :

REPORT AND RECOMMENDATION

    This matter is before the Court to consider the motion for summary judgment filed by defendant Jeffrey Norman Hazzard.  The motion has been fully briefed.  For the following reasons, it will be recommended that the motion for summary judgment be granted in part and denied in part.

I. Background

    Plaintiff Benjamin Hendricks filed an amended complaint in this matter on April 19, 2012.  For purposes of the current motion, Mr. Hendricks asserts claims against Mr. Hazzard under 42 U.S.C. §1983 for excessive use of force and retaliatory destruction of his legal materials in violation of Mr. Hendricks' constitutional rights.  According to the amended complaint, on January 15, 2010, Mr. Hazzard, after being told Mr. Hendricks had a shoulder implant in his left arm, grabbed Mr. Hendricks by that arm and "threw" Mr. Hendricks into a holding cell causing a "popping" sound and "extreme" pain.  Eventually, it was determined that the implant had become loose and surgery was recommended.  The amended complaint further alleges that on June 18, 2010, Mr. Hazzard destroyed Mr. Hendricks' legal materials relating to this case and another case Mr. Hendricks subsequently filed in this Court.  The amended complaint also contains

generalized allegations of Mr. Hendricks' harassment by Mr. Hazzard continuing on some level through April, 2012, even after Mr. Hendricks received a favorable disposition on the issue when he pursued it through the administrative grievance process.

By way of further background, the amended complaint, consistent with this Court's previous order granting Mr. Hazzard leave to file, also names as defendants several current or former officials at the Pickaway Correctional Institution including Gene Wessell, Deputy Warden; Carole Crockett-Harris, Unit Manager Administrator/ADA Coordinator; Mary Lawrence, Inspector of Institutional Services; and Roger Roddy, Deputy Warden. The amended complaint also names as defendants Ernie Moore, the former Director of the Ohio Department of Rehabilitation and Corrections and Gary Mohr, the current ODRC Director. All of these defendants, with the exception of Mr. Hazzard, are sued only in their official capacities and some of Mr. Hendricks' claims against them are the subject of a separate motion to dismiss.

In the current motion, Mr. Hazzard has moved for summary judgment on the ground that Mr. Hendricks has not exhausted his administrative remedies as required by the Prison Litigation Reform Act and, therefore, Mr. Hazzard is entitled to judgment as a matter of law. In support of his motion, Mr. Hazzard has submitted a declaration from Ms. Lawrence which includes as exhibits various documents relating to Mr. Hendricks' use of the administrative grievance process. Mr. Hendricks has responded to this motion and submitted a declaration which he signed under penalty of perjury pursuant to 28 U.S.C. §1746. He also has attached several documents relating to his use of the administrative grievance process. Mr. Hazzard has filed a reply supported by a second declaration from Ms. Lawrence.

II. <u>The Motion for Summary Judgment</u>

In his motion for summary judgment, Mr. Hazzard asserts that, with respect to the specific incidents identified in the amended complaint - an alleged excessive use of force incident in January 2010, and a destruction of legal materials incident in June, 2010 - any claims are unexhausted because Mr. Hendricks began the grievance process by filing informal complaints but did not pursue the claims past that level. Further, with respect to the more general allegations of harassment set out in the complaint, Mr. Hazzard contends that any claim arising from them has not been exhausted because Mr. Hendricks did not pursue any administrative remedies until after the filing of this action.

The declaration of Ms. Lawrence submitted by Mr. Hazzard states the following. According to Mr. Hendricks' grievance file, since January 2009, he has filed over 100 informal complaints, twenty formal grievances, and ten appeals as well as five direct grievances against either a prison warden or institutional inspector. Between January 2010 and June 2011, Mr. Hendricks filed three informal complaints and one formal complaint against Mr. Hazzard. Lawrence Declaration at ¶8. Mr. Hendricks has never filed an appeal of a formal grievance against Mr. Hazzard with the Chief Inspector's Office. Id. In April, 2011, Mr. Hendricks filed an informal complaint against Mr. Hazzard regarding incidents of harassment and, when he did not receive a timely response, he submitted a formal complaint. Id., at ¶9. This grievance was granted and Mr. Hendricks did not file an appeal. Id. Copies of three informal complaints dated June 19, 2010, January 13, 2011, and April 21, 2011, the formal grievance filed May 15, 2011, and corresponding responses are attached to her declaration.

In response, Mr. Hendricks argues that his verified complaint and the declaration and exhibits attached to his response contradict Ms. Lawrence's declaration and demonstrate

3

the "apparent complete disarray" of the record keeping system in place at Pickaway. Further, Mr. Hendricks contends that Ms. Lawrence and her predecessor denied his requests for grievance forms and that he grieved this failure. This denial of grievance forms, according to Mr. Hendricks, should excuse his failure to exhaust administrative remedies because it rendered the grievance system unavailable to him.

With respect to the allegations in the amended complaint regarding the incident in January, 2010, Mr. Hendricks' declaration and the attachments set forth the following. On February 22, 2010, he filed an informal complaint with Lt. Kenneth Black. Hendricks Declaration ¶5. Although the copy of this informal complaint attached to the response is of very poor quality, it does appear that this document relates to the alleged treatment by Mr. Hazzard received by Mr. Hendricks upon his arrival in the segregation unit in January, 2010, as set forth in the amended complaint. Exhibit A to Hendricks Declaration. On March 19, 2010, Mr. Hendricks filed an informal complaint with Ms. Wessell. The copy of this complaint attached to the motion, also of very poor quality, appears to relate to an incident on March 19, 2010 involving the locking of inmate doors by Mr. Hazzard, and to request a separation from Mr. Hazzard. Exhibit C to Hendricks Declaration. According to Mr. Hendricks' declaration, in April, 2010, he filed a notification of grievance with the Chief Inspector of Institutional Services. Hendricks Declaration ¶8. Mr. Hazzard has not attached a copy of this document to his declaration.

With respect to the alleged destruction of Mr. Hendricks' legal materials in June, 2010, his declaration states that he filed an informal complaint with Ms. Crockett-Harris on June 19, 2010, but this complaint was ignored and his request for a notification of grievance form was denied. Hendricks Declaration

4

¶9. A copy of this complaint is attached to Mr. Hendricks' declaration as Exhibit D. This complaint references Mr. Hazzard's alleged retaliatory destruction of Mr. Hendricks' property and legal materials as set forth in the amended complaint. Mr. Hendricks further states that he filed an informal complaint with Ms. Lawrence on June 22, 2010 about Mr. Hazzard's alleged retaliatory behavior. Hendricks Declaration ¶10. The contents of this document are mostly illegible. This complaint also was ignored and Mr. Hendricks received no response to his request for a notification of grievance form. Id.

On July 18, 2010, Mr. Hendricks was transferred to the Belmont Correctional Institution for a month. Hendricks Declaration, ¶11. When Mr. Hendricks returned to Pickaway, Mr. Hazzard continued the alleged harassment. Id. at ¶12. Mr. Hendricks sent a kite to Ms. Lawrence which he has attached to his declaration as Exhibit F. In this document, he references Mr. Hazzard's behavior and requests a "legal kit" and notification of grievance form. This document was returned to him without a response. Hendricks Declaration ¶12. On November 15, 2010, Mr. Hendricks filed, with the Chief Inspector's Office, a notification of grievance by utilizing an informal complaint form. Id. at ¶13, Exhibit G. In December, 2010, Mr. Hendricks filed a letter with defendant Moore's office. Id. at ¶14, Exhibit H. On January 13, 2011, Mr. Hendricks filed an informal complaint with Warden Brian Cook. Id. at ¶17, Exhibit J. When Mr. Hendricks did not receive an answer from Warden Cook, he proceeded to request a notification of grievance form from Ms. Lawrence and filed an appeal with the Chief Inspector. Id. at ¶18, ¶19, Exhibits K and L. On March 18, 2011, he received a notice that the Chief Inspector would not address the merits of his complaint without a notification of grievance and a disposition of grievance being submitted. Id. at ¶20.

With respect to the more general allegations of harassment by Mr. Hazzard set forth in the amended complaint, Mr. Hendricks' declaration states that he filed an informal complaint on April 21, 2011, and notifications of grievance on May 2 and May 15, 2011. Hendricks Declaration ¶¶21-25, Exhibits N, O, and Q. Mr. Hendricks also has attached to his response declarations from four inmates attesting to his problems with Mr. Hazzard. Id. at ¶¶26-29, Exhibits R, S, T, and U. Finally, Mr. Hendricks states that he has complained at least three times to the Chief Inspector regarding issues with the grievance process at Pickaway, one of which was followed up by a meeting. Id. at ¶¶30-31.

In reply, Mr. Hazzard contends that none of the evidence in support of Mr. Hendricks' response raises a genuine issue of material fact as to whether Mr. Hendricks properly exhausted his administrative remedies. According to Mr. Hazzard, whether Mr. Hendricks filed six informal complaints and one formal complaint (as Mr. Hendricks contends) or three informal complaints and one formal complaint (as Mr. Hazzard contends), there is no dispute that Mr. Hendricks failed to complete all three steps of the grievance process and, therefore, has not exhausted his administrative remedies.

III. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence

submitted must be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," <u>Celotex</u>, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

### IV. <u>Analysis</u>

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120-9-31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at ODRC must comply with its three-step grievance system. Ohio Admin. Code § 5120-9-31(K). For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120-9-31(K)(1). Such action must

7

be taken "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint ...." Id. If the inmate is not satisfied with the results, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120-9-31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. Id. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120-9-31(K)(3). This appeal must be filed within fourteen days of the disposition of the formal grievance. Id. All inmates in the custody of ODRC receive both written and oral instructions on how to use the grievance system, including instructions on appeals to the Chief Inspector's office and how to file direct grievances to that office, as required by Ohio Admin. Code § 5120-9-31(C).

With respect to the incident of January 15, 2010, there is no question that Mr. Hendricks did not exhaust his administrative remedies. Based on the record, it appears that he filed only an informal complaint with Lt. Black on February 22, 2010. Mr. Hendricks states in his declaration that Lt. Black forwarded this complaint on to the Acting Inspector of Institutional Services. This is the only action taken by Mr. Hendricks with respect to the January 15, 2010 incident until he filed another informal complaint on January 13, 2011, with Warden Brian Cook. Because nearly a year had passed since the event, Warden Cook declined to take any action on the complaint. The filing of this second formal complaint with the Warden nearly a year after the incident is not consistent with the provisions of Ohio's three-step grievance system set forth above. Consequently, any actions taken by Mr. Hendricks after that date - even to the extent that

8

Mr. Hendricks styled them as his "final step in the PLRA exhaustion requirement" - do not raise a genuine issue of material fact as to whether he properly exhausted his administrative remedies as to his use of force claim arising from an incident in January, 2010.

Further, to the extent that Mr. Hendricks contends that the informal complaint he filed with Ms. Wessell on March 19, 2010, serves as another step in the exhaustion of his use of force claim, he is mistaken. The informal complaint dated March 19, 2010 relates to an incident on that date involving the locking of inmates' doors by Mr. Hazzard. While Mr. Hendricks does mention another informal complaint he filed against Mr. Hazzard as a possible motive for Mr. Hazzard's decision to lock inmates' doors, this document cannot be found to raise any genuine issue of material fact regarding Mr. Hendricks' exhaustion of his administrative remedies relating to his excessive use of force claim. Similarly, if, as Mr. Hendricks claims, he filed a notification of grievance in April, 2010 with the Chief Inspector about the inspector of institutional services and the grievance process, again this does not serve to create a genuine issue of material fact as to whether he properly exhausted his administrative remedies with respect to his use of force claim against Mr. Hazzard arising from the incident on January 15, 2010. In short there is no evidence in the record which would allow the trier of fact to conclude that Mr. Hendricks pursued the grievance process through the final level of appeal with respect to his excessive use of force claim. Consequently, the Court will recommend that summary judgment be entered in Mr. Hazzard's favor on this claim.

However, with respect to his retaliatory destruction of his legal materials claim involving the events of June 18, 2010, the Court finds that Mr. Hendricks has provided evidence sufficient

to raise a genuine issue of material fact. According to his declaration, Mr. Hendricks asserts that he filed an informal complaint about this incident with Ms. Crockett-Harris on June 19, 2010, and with Ms. Lawrence on June 22, 2010. He maintains that these complaints were ignored as were his requests for notification of grievance forms.

While, as Mr. Hazzard contends, there is no question that filing an informal complaint with Ms. Lawrence, the institutional inspector, was not the proper first step in the grievance process, the issue is not so clear with respect to Ms. Crockett-Harris. In his reply, Mr. Hazzard does not address directly the issue of the informal complaint filed with Ms. Crockett-Harris and whether the filing of that complaint satisfied the first step in the grievance process. Instead, he limits his discussion specifically to Ms. Lawrence and submits an additional declaration from her only. In her second declaration, Ms. Lawrence states that she found no requests for formal complaints from Mr. Hendricks for the month of June, 2010, indicating his failure to pursue the second step of the grievance process for this claim. See Lawrence Declaration, Doc. #55-1, ¶¶4 and 5.

Further, Mr. Hazzard appears to argue that the statement in Mr. Hendricks' unsworn declaration relating to the filing of informal complaints (which presumably includes the one he filed with Ms. Crockett-Harris) and the statement that he did not receive requested grievance forms are insufficient to raise a genuine issue of material fact. Based on the record as it currently stands, the Court does not agree.

First, to the extent that Mr. Hazzard may be suggesting that Mr. Hendricks' unsworn declaration does not constitute sufficient evidentiary material for this Court's consideration, he is mistaken. As noted above, Mr. Hendricks specifically stated in his declaration that it was made under penalty of perjury

10

pursuant to 28 U.S.C. §1746.  That statute provides that "unsworn declarations under penalty of perjury" may be used with the same force and effect to support, evidence, establish or prove any matter that is required or permitted to be supported by affidavit.  Declarations executed within the United States must substantially conform to the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28 U.S.C. §1746(2).  Mr. Hendricks states the following on page one of his declaration:  "I, Benjamin Hendricks, the Plaintiff in the above captioned case, pursuant to 28 U.S.C. § 1746, makes this unsworn declaration under penalty of perjury and declare that the statements below are true and accurate[.]"  This declaration bears Mr. Hendricks' signature and the date of its execution of May 21, 2012.  Based upon this review, the Court concludes that this declaration substantially comports with the requirements of §1746 and that it is, therefore, sufficient for the purposes of Fed.R.Civ.P. 56.

As a result, the state of the record with respect to Mr. Hendricks' exhaustion of his claim arising from the alleged retaliatory destruction of his legal materials can be summarized as follows.  Mr. Hendricks states that he pursued the first step of the grievance process by filing an informal complaint with Ms. Crockett-Harris as well as with Ms. Lawrence.  While Mr. Hazzard correctly asserts that filing with Ms. Lawrence was improper, he does not argue that Mr. Hendricks' filing of an informal complaint with Ms. Crockett-Harris failed to satisfy the first step.  Mr. Hendricks has submitted appropriate evidentiary material to the Court stating that he requested notification of grievance forms to pursue the second step of the grievance process with respect to the alleged destruction of his legal materials and that his requests were denied.  Mr. Hazzard has

submitted an affidavit from Ms. Lawrence stating that she has no record of Mr. Hendricks' requests for formal grievance forms in June, 2010. Construing this evidence in the light most favorable to Mr. Hendricks, however, as the Court is required to do at the summary judgment stage, a genuine issue of material fact exists as to whether Mr. Hendricks can be found to have exhausted fully his administrative remedies with respect to this claim.

As this Court explained in <u>Brown v. Blackwell</u>, Case No. 2:10-cv-966, 2011 WL 63595, *2 (S.D. Ohio January 6, 2011),

> The exhaustion provision of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The use of the phrase "as are available" implies that if the prison has taken action to make its administrative remedies unavailable, the prisoner has no obligation to pursue them. In other words, as this Court has held, a prisoner need not use prison remedies which are not "'reasonably available.'" <u>Williams v. Hurley</u>, 2007 WL 1202723, *3 (S.D. Ohio April 23, 2007) (Watson, J.), quoting <u>Pack v. Martin</u>, 174 Fed. Appx. 256, 262 (6th Cir. March 27, 2006); <u>see</u> <u>also</u> <u>Little v. Jones</u>, 607 F.3d 1245, 1250 (10th Cir. 2010)) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust").

If Mr. Hendricks' allegation is true, it may excuse his failure to follow the grievance process to its final conclusion (assuming that Pickaway, and not Mr. Hendricks, caused the process to short-circuit). This circumstance would allow Mr. Hendricks to litigate the issue of the alleged retaliatory destruction of his legal materials without a final decision from Pickaway. On the other hand, if Mr. Hendricks is unable to show, as a matter of fact, that it was Pickaway which thwarted his good

12

faith efforts to exhaust available prison remedies as to his claim regarding the destruction of his legal materials, the Court will be required to dismiss the case under § 1997e(a). See, e.g., Singh v. Goord, 520 F.Supp.2d 487 (S.D.N.Y. 2007). Consequently, the Court will recommend that the motion for summary judgment be denied as to Mr. Hendricks' claim regarding the alleged retaliatory destruction of his legal materials.

In reaching this conclusion, the Court notes that it finds Mr. Hazzard's suggestion that Mr. Hendricks did not offer enough details in his declaration to defeat the motion for summary judgment to be without merit. In making this argument, Mr. Hazzard relies on Clark v. Walgreen Co., 424 Fed. Appx. 467, 471-72 (6th Cir. 2011), and its discussion of the summary judgment standard generally. While the Court recognizes that conclusory statements unsupported by specific facts will not permit a party to survive summary judgment, see Lewis v. Philip Morris, Inc., 355 F.3d 515, 533 (6th Cir. 2004), Mr. Hendricks has provided enough specificity, as set forth above, to satisfy his burden in this case.

With respect to the general allegations of harassment set out in the amended complaint involving events in April and May, 2011, to the extent that Mr. Hendricks intends them as a specific claim or as the basis for a separate retaliation claim, Mr. Hazzard makes two arguments in support of summary judgment in his favor. First, he argues that, because these allegations relate to incidents which occurred after the filing of the original complaint, Mr. Hendricks could not have exhausted any claim before filing this action. In support of this position, Mr. Hazzard cites to Hopkins v. Ohio Dept. of Corrections, 84 Fed. Appx. 526 (6th Cir. 2003) for the general proposition set forth in Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), that exhaustion may not be completed after a federal complaint has

13

been filed.  Mr. Hazzard also argues that this claim of general harassment is unexhausted because Mr. Hendricks failed to complete the full administrative process, having pursued his claim only through the formal grievance level.

As the Court reads Mr. Hendricks' amended complaint, he is not asserting a separate claim based specifically on the incidents in April and May, 2011.  He clearly states in both his amended complaint and his declaration that he grieved these incidents and was granted a favorable disposition.  While he states in his amended complaint that Mr. Hazzard continued to harass him after the grievance was resolved, he states in his declaration that "[t]he problem seemed to have been solved with the exception of childish incidents by Defendant Hazzard such as a middle finger every now and then."  He does not assert, in either his amended complaint or his declaration, that he pursued the grievance process again with respect to these 2011 incidents after the favorable resolution even if he perceived that Mr. Hazzard's alleged conduct was not totally corrected.  Under this circumstance, there is no issue of exhaustion relating to these incidents to be addressed by the Court.  Rather, as the Court reads Mr. Hendricks' complaint and declaration, the allegations surrounding the incidents in April and May, 2011, appear to be background information presumably designed to provide some context for Mr. Hendricks' filing of a notification of grievance addressed to Mr. Hazzard's behavior in April, 2012.  In his motion for summary judgment, Mr. Hazzard does not address the issue of exhaustion as it relates specifically to any claim of harassment or retaliation arising in April, 2012.  However, the arguments he sets forth with respect to Mr. Hendricks' claim regarding Mr. Hazzard's alleged behavior in April and May, 2011, apply more directly to the claim regarding his alleged behavior in April, 2012.

According to his declaration, Mr. Hendricks filed a notification of grievance with Ms. Lawrence on May 2, 2012. As discussed above, this is the second stage of Ohio's administrative grievance process and Mr. Hendricks provides no evidence from which a trier of fact could conclude that he pursued the first step of the process. As a result, in filing his amended complaint, Mr. Hendricks included a claim, whether for harassment or retaliation, that was not exhausted properly. As the Sixth Circuit has made clear, exhaustion cannot be completed after a federal complaint has been filed. Freeman, 196 F.3d at 645. Consequently, the Court will recommend that the motion for summary judgment be granted as to Mr. Hendricks' claim of harassment or retaliation by Mr. Hazzard in April, 2012.

Finally, the Court notes that Mr. Hendricks has filed a motion for leave to file a sur-reply, to file a motion to strike Mr. Hazzard's reply and to request sanctions under Rule 11. According to this motion, Mr. Hazzard's reply and Ms. Lawrence's declaration attached to it are filled with false or misleading information. Mr. Hendricks requests that Mr. Hazzard withdraw the reply and declaration by July 6, 2012. In the event Mr. Hazzard does not so withdraw, Mr. Hendricks requests the ability to file his requested sur-reply and motions by July 15, 2012. Mr. Hazzard has responded asserting that Mr. Hendricks has failed to show good cause for the filing of a sur-reply and that he has misapprehended the purpose of the safe harbor provision of Fed.R.Civ.P. 11. Mr. Hendricks has not filed a reply nor has he filed his sur-reply and motions by his stated deadline of July 15, 2012.

To the extent that Mr. Hendricks seeks leave to file a sur-reply, the Court will deny the motion because Mr. Hendricks has not established good cause for its filing. Mr. Hendricks has neither attached a copy of his proposed sur-reply to his motion

for leave for the Court's review nor has he even argued that Mr. Hazzard's reply raised new grounds not presented in his initial summary judgment motion as generally required to support the filing of a sur-reply. See <u>Comtide Holdings, LLC v. Booth Creek Management Corp.</u>, Case No. 2:07-cv-1190, 2010 WL 4117552 (S.D. Ohio October 19, 2010). With respect to the remaining issues raised by Mr. Hendricks' motion, the Court does not construe the motion as currently framed as requesting either that Ms. Lawrence's declaration be stricken or that Rule 11 sanctions be awarded and, therefore, the Court will not address those issues.

V. <u>Conclusion</u>

For the reasons stated above, it is recommended that the motion for summary judgment (#49) be granted as it relates to the excessive use of force claim arising from the January 15, 2010 incident and the harassment or retaliation claim arising in April, 2012. Further, it is recommended that the motion for summary judgment be denied as it relates to the retaliation claim arising from the events of June 18, 2010. Further, the motion for leave to file a sur-reply (#56) is denied.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge