```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Benjamin Hendricks,

    Plaintiff,

  v.                                           Case No. 2:11-cv-399

Jeffrey Norman Hazzard, et al.,      JUDGE MICHAEL H. WATSON
                                                  Magistrate Judge Kemp

    Defendants.

## REPORT AND RECOMMENDATION AND ORDER

    This matter is before the Court to consider a motion for a temporary restraining order and preliminary injunction filed by plaintiff Benjamin Hendricks on April 15, 2013.  Defendants have filed a response and the motion has been fully briefed.  For the following reasons, it will be recommended that the motion be denied.  Also, before the Court are a motion to appoint counsel and a motion to amend the scheduling order.  The motion for appointment of counsel will be denied and the motion to amend the scheduling order will be granted.

### I. Background

    The facts of this case have been set forth in detail in several previous orders of the Court and will not be repeated at length here.  Briefly, however, for purposes of the current motion, following rulings on motions to dismiss and for summary judgment, two claims remain in this case.  First, there is a retaliation claim against defendant Jeffrey Norman Hazzard relating to the alleged destruction of Mr. Hendricks' legal materials on June 18, 2010.  Further, there is a claim against Gene Wessell, Carole Crocket-Harris and Mary Lawrence in their official capacities seeking injunctive and declaratory relief to address alleged ongoing violations of constitutional rights at

the Pickaway Correctional Institution.  The amended complaint also names Ernie Moore, Gary Mohr and Roger Roddy in their official capacities, but there is no indication on the Court's docket that service has ever been made on these defendants.

II.  Mr. Hendricks' Motion for a TRO or Preliminary Injunction

Mr. Hendricks, who apparently was housed in the segregation portion of the Frazier Medical Center at the Pickaway Correctional Institution at the time he filed his motion, contends that a TRO or preliminary injunction moving him to a different housing assignment is necessary to protect him from Mr. Hazzard.  Mr. Hendricks asserts that he fears for his safety and asks to be placed in either the Frazier Health Center Long Term Care facility on the second floor (where he has been housed for years) or the second floor of the Franklin Medical Center Long Term Care facility.  The gist of Mr. Hendricks' motion is that Mr. Hazzard has a history of threatening and retaliating against him and the administration has not taken any action to stop this behavior.  He contends that, most recently, Mr. Hazzard has suggested to Mr. Hendricks' cellmate in segregation, a member of the Aryan Brotherhood, that he physically attack Mr. Hendricks, apparently because, in light of his position, Mr. Hazzard is unable to do it himself.

Besides offering a history of incidents involving Mr. Hazzard, Mr. Hendricks, in the declaration attached to his motion, discusses the two relatively recent incidents which appear to provide the impetus for his motion.  As Mr. Hendricks explains, the first of these events occurred on January 23, 2013, and led to his being placed in the segregation cell with the "captain" of the Aryan Brotherhood.  Hendricks' Declaration, ¶¶16-18.  According to Mr. Hendricks, he was placed in the segregation unit after having been found guilty by the Rules Infraction Board of establishing an inappropriate relationship

with a prison chaplain who had attempted to help him with his medical problems.  Mr. Hendricks contends that he was not present at his local control hearing.  Id.

As Mr. Hendricks further explains in his declaration, the second event occurred on March 29, 2013, when Mr. Hazzard was working in Mr. Hendricks' living area.  According to Mr. Hendricks, he had filed an informal complaint following his cellmate's disclosure of Mr. Hazzard's suggestion of a physical attack.  Apparently not having received a response to this complaint, Mr. Hendricks asked an on-duty lieutenant to help him with getting the complaint addressed.  Mr. Hendricks contends that, when Mr. Hazzard became aware of this request for help, he threatened Mr. Hendricks with a conduct report and harassed him. Hendricks' Declaration, ¶¶22-23.

Mr. Hendricks' 41-page exhibit attached to his motion consists of, in addition to his declaration, affidavits from various inmates signed and dated in 2010 and 2011, and various grievance documents from 2011-2013.  This information reveals, in part, that on March 29, 2013, Mr. Hazzard issued a conduct report to Mr. Hendricks for cursing and threatening Mr. Hazzard's safety.  A disposition of the Rules Infraction Board dated April 9, 2013, indicates that Mr. Hendricks was found guilty of disrespecting Mr. Hazzard by calling him names and threatening bodily harm.  Mr. Hendricks offered a defense, but the Board found that his witnesses were not credible and accepted the conduct report as written.  Mr. Hendricks was placed in disciplinary control on March 29, 2013.  Mr. Hendricks' confinement in disciplinary control was scheduled to end on April 12, 2013, at which point he was to be placed back in local control.  On April 9, 2013, Mr. Hendricks filed a notice of disciplinary appeal claiming that there was no evidence to support the Board's decision because the Board relied exclusively

on the conduct report issued by Mr. Hazzard.

In response, defendants have submitted a declaration from Ms. Lawrence.  According to this declaration, Mr. Hendricks was issued a conduct report on January 20, 2013, alleging an unauthorized relationship with a staff member.  Declaration at ¶3.  The Rules Infraction Board found Mr. Hendricks guilty of the violation and Mr. Hendricks was placed in disciplinary control and eventually local control. Id.  His security classification was raised from level 2 to level 3. Id. at ¶4.  Prison officials are considering transferring Mr. Hendricks to the Ross Correctional Institution but the transfer has been delayed pending consideration of whether his medical needs can be met at Ross.  Id.  Upon Mr. Hendricks' release from the segregation portion of the Frazier Medical Center, he is scheduled to be housed in the general population at Pickaway.  Id. at ¶5.  On April 8, 2013, Mr. Hendricks approached Ms. Lawrence and alleged the harassment by Mr. Hazzard.  Id. at ¶6.  Ms. Lawrence waived the requirement for Mr. Hendricks to file an informal complaint and allowed him to submit a formal grievance directly to her. Id.  She investigated Mr. Hendrick's allegations,  found them to be without merit, and denied his formal complaint.  Id. at ¶13.

Relying on this declaration, defendants argue that Mr. Hendricks' factual allegations of harassment are without merit and that, regardless, he has not met the criteria required for the issuance of a TRO or preliminary injunction.  Specifically, defendants contend that Mr. Hendricks cannot succeed on any claim of retaliation arising from the events of March 29, 2013, because he was found guilty of a rule violation by the Rules Infraction Board.  With respect to any allegations of threats or "general incivility," defendants argue that verbal abuse does not rise to the level of a constitutional violation.  Further, they contend that Mr. Hendricks has not demonstrated that he will suffer

irreparable harm if his motion is not granted. Finally, they argue that the public interest would not be served by granting Mr. Hendricks' motion. As they see it, the allegations of his motion all occurred after Mr. Hendricks' security level was increased and he is attempting to "leverage this ongoing civil action in order to interfere" with prison security concerns arising from his failure to follow prison rules. They contend that transfers are a routine part of prison operations and courts should be reluctant to interfere.

In reply, Mr. Hendricks takes issue with any suggestion by the defendants that he is attempting to interfere with prison security concerns. He contends that at the time he filed his motion, he was unaware of any pending transfer. He also argues that administrative prison regulations were not followed in connection with either his disciplinary hearings or security increase. Further, he challenges the credibility of Ms. Lawrence's investigation. Finally, he raises issues about his health and his healthcare needs mandating that he be housed in a healthcare facility, his willingness to submit to a polygraph test, and the alleged proposal to transfer him to the general prison population in light of his well-documented need for medical care. He has attached 21 pages of exhibits to his reply and has made an additional 38-page filing. He requests a hearing on his motion.

### III. Analysis

At first glance, the motion for a TRO does not appear to be related specifically to the remaining allegations of Mr. Hendricks' complaint in this case. As explained above, the currently pending claims include a claim against Mr. Hazzard for retaliation relating to the alleged destruction of Mr. Hendricks' legal materials on June 18, 2010, and a claim for injunctive or declaratory relief against the other defendants in their official

capacities relating to alleged ongoing problems at the Pickaway Correctional Institution. The current motion seeking placement in either the Frazier Health Center Long Term Care facility or the Franklin Medical Center Long Term Care facility appears to relate primarily to recent events which occurred well after the filing of the complaint. Mr. Hendricks' motion may be denied on this ground alone.

As one court recently explained, a motion for a TRO or preliminary injunction is not the proper vehicle for Mr. Hendricks to use in an attempt to address other issues unrelated to his original complaint.

> The purpose of such relief "is simply to preserve the status quo." United States v. Edward Rose & Sons, 384 F.3d 258, 261 (6th Cir. 2004); see University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); Tennessee Scrap Recyclers Ass'n v. Bredesen, 556 F.3d 442, 447 (6th Cir. 2009). The availability of a TRO or preliminary injunction is inextricably intertwined with the merits of the underlying claim. For this reason, one of the principal factors in determining a plaintiff's entitlement to relief is the likelihood that the plaintiff will succeed on the merits of his underlying claims. See United States v. Contents of Accounts, 629 F.3d 601, 606 (6th Cir. 2011). Hence, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in the complaint. See Colvin v. Caruso, 605 F.3d 282, 298 (6th Cir. 2010). A motion for a TRO or preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable.

Arrington v. Scott, 2013 WL 1080298 (W.D. Mich. January 7, 2013). Strictly interpreted, Mr. Hendricks' motion is unrelated to the underlying claim pending in this case. See Id.; see also Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (plaintiff not entitled to preliminary injunction on claims not pending in complaint); Devose v. Herrington, 42 F.3d 470, 471 (8th Cir.

-6-

1994).

At the same time, however, the Court recognizes that Mr. Hendricks has attempted to suggest that Mr. Hazzard's alleged long-standing history of retaliatory behavior, including the allegations underlying the complaint in this case, warrant the relief requested in his motion - that he be housed in a facility away from Mr. Hazzard and specifically in a long-term healthcare facility.  However, even construing Mr. Hendricks' motion in this way, and addressing it on its merits, Mr. Hendricks is not entitled to the relief he seeks.

In deciding whether to grant a TRO or preliminary injunction, the Court considers the same factors.  <u>Ohio Republican Party v. Brunner</u>, 543 F.3d 357, 361 (6th Cir. 2008). These factors include: (1) whether the plaintiff is likely to succeed on the merits, (2) whether the plaintiff is likely to suffer irreparable injury absent an injunction, (3) whether the preliminary injunction will cause substantial harm to others, and (4) whether the public interest would be served by granting the injunction.  <u>Hunter v. Hamilton County. Bd. of Elections</u>, 635 F.3d 219, 233 (6th Cir. 2011); <u>see also</u> <u>Rock & Roll Hall of Fame v. Gentile Productions</u>, 134 F.3d 749, 753 (6th Cir. 1998); <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).  These factors are to be balanced, they are not prerequisites that must be met.  <u>In re Eagle-Picher Indus., Inc.</u>, 963 F.2d 855, 859 (6th Cir. 1992); <u>Dayton Area Visually Impaired Persons, Inc. v. Fisher</u>, 70 F.3d 1474, 1480 (6th Cir. 1995).  However, some demonstration of irreparable injury is required for injunctive relief. <u>Patio Enclosures, Inc. v. Herbst</u>, 39 F. App'x 964, 967 (6th Cir. 2002); <u>see also</u> <u>Winter</u>, 555 U.S. 22-23 (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are

-7-

required] to demonstrate that irreparable injury is likely in the absence of an injunction"). Further, "a finding that there is simply no likelihood of success on the merits is usually fatal." Gonzalez v. Nat'l Bd. of Med. Exam'rs, 225 F.3d 620, 625 (6th Cir. 2000).

Mr. Hendricks bears the burden of demonstrating that he is entitled to a preliminary injunction. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Layette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th. Cir. 2002); Winter, 555 U.S. at 24. Further, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000). Additionally, where a prison inmate seeks an order enjoining state prison officials, courts are required to proceed carefully and with an awareness of the unique nature of the prison setting. See Kendrick v. Bland, 740 F.2d 432, 438, n. 3 (6th Cir. 1984). Mr. Hendricks has not met his burden here.

First, at this point, the Court cannot determine whether Mr. Hendricks has demonstrated a likelihood of success on the merits. In order to succeed on his retaliation claim, Mr. Hendricks must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)(en banc). Moreover, Mr. Hendricks must be able to prove that the exercise of the protected right was a substantial or motivating factor in Mr. Hazzard's alleged retaliatory conduct. See Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001),

-8-

citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Court simply cannot determine whether Mr. Hendricks' allegations of retaliation form the basis for a finding of a constitutional violation. Additionally, with respect to his claims of verbal harassment, inmates have no right to be free from verbal abuse and minor threats. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987). Consequently, on the current record, Mr. Hendricks' likelihood of success on the merits does not weigh in favor of granting a preliminary injunction.

Further, Mr. Hendricks has not demonstrated that he will suffer irreparable harm absent injunctive relief. At best, Mr. Hendricks has alleged ongoing general harassment and threats by Mr. Hazzard. To the extent that he has alleged more specifically Mr. Hazzard's suggestion of a physical attack, he also has explained that this suggestion was reported to him and never acted upon. As a result, Mr. Hendricks has not demonstrated the imminence, or even the likelihood, of physical injury sufficient to support the issuance of preliminary injunctive relief. See, e.g., Johnson v. Payton, 2013 WL 1843979, *3 (E.D. Mich. April 10, 2013), affirmed 2013 WL 1843971 (E.D. Mich. May 1, 2013), citing Winter, 555 U.S. 7 at 22; 11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d §2948 at 153-56 (West 1995) ("Speculative injury is not sufficient," and "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown."). Consequently, this factor does not weight in favor of granting a preliminary injunction.

The third factor, frequently termed "the balance of equities" also weighs against a preliminary injunction. See Rhinehart v. Scutt, 2013 WL 28095, *5 (6th Cir. January 2, 2013). This factor requires the Court to weigh the interests of the

defendants against Mr. Hendricks' interest in being separated from Mr. Hazzard. Because, as discussed above, Mr. Hendricks has shown neither a likelihood of success on the merits or irreparable harm, this balance weights against preliminary injunctive relief. Id.

Finally, no public interest would be served by granting Mr. Hendricks the relief he seeks. Interference by federal courts in the administration of state prison matters is generally disfavored. See Johnson v. Payton, 2013 WL 1843979 at *5, citing Glover v. Johnson, 855 F.2d 277, 286-87 (6th Cir. 1988) ("Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a showing of a violation of constitutional rights."). Consequently, the public interest does not support the remedy of injunctive relief. For all of these reasons, the Court will recommend that Mr. Hendricks' motion for a TRO or preliminary injunction be denied. The Court will also recommend that Mr. Hendricks' request for a hearing on his motion be denied.

## IV. Remaining Motions

Mr. Hendricks also has requested the appointment of counsel. "Appointed counsel in civil suits is a privilege only justified in exceptional circumstances...." Jennings v. Bradley, 419 Fed. Appx. 594, 598 (6th Cir. 2011), citing Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993). Based on the current record, the Court cannot conclude that such exceptional circumstances exist in this case. Consequently, the motion for appointment of counsel will be denied.

Mr. Hendricks' final pending motion is a motion to amend the scheduling order. In this motion, he requests an extension of the discovery deadline to September 30, 2013. Defendants have

not opposed this motion.  The motion sets forth good cause for the requested extension.  Consequently, the motion for an amendment of the scheduling order will be granted.

## V. Recommended Disposition and Order

For the reasons set forth above, it is recommended that the motion for a temporary restraining order or preliminary injunction and request for a hearing (#80) be denied. Plaintiff's motion for appointment of counsel (#77) is denied. Plaintiff's motion for an amendment of the scheduling order (#81) is granted.  All discovery shall be completed by September 30, 2013.  Dispositive motions shall be filed by October 30, 2013.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge
